UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


JAMES ARTHUR ROSS,

          Plaintiff,

             Case No. 2:18-cv-00046-YY

   v.

             FINDINGS AND

JOHN MYRICK, et al.,            RECOMMENDATIONS

          Defendants.


YOU, Magistrate Judge:

     James Arthur Ross, a *pro se* inmate housed at Two Rivers Correctional Institution in Umatilla, Oregon, brings this action against former Superintendent John Myrick, the Oregon Department of Corrections ("ODOC"), and ODOC employees Bob Culp and Debbie Myers. Ross alleges that defendants collected monies from his prison trust account to satisfy a judgment for state court filing fees in violation of his state and federal rights, including his right to be free from illegal search & seizure, cruel and unusual punishment, and all forms of slavery; his right to equal protection and due process of the law; and his rights under the Oregon Poverty Rule. Compl. 4, ECF #2.  Defendants collectively seek summary judgment (ECF #22), and Ross has filed a cross-motion for summary judgment in his favor (ECF #26).  For the reasons discussed

1 – FINDINGS AND RECOMMENDATIONS

below, defendants' motion should be GRANTED, Ross' cross-motion should be DENIED, and this action should be dismissed in its entirety.

## FACTUAL BACKGROUND

While in ODOC custody, Ross filed a post-conviction case, CV150462, in Umatilla County Circuit Court. Compl. 4, ECF #2; Culp Decl., Att. 5, ECF #23. The filing fee, in the amount of $252.00, was deferred. Culp Decl., Att. 5, at 1, ECF #23. On March 26, 2015, the court issued a limited money judgment creating a lien against Ross' inmate trust account in that amount. *Id*. at 2. In accordance with the judgment, funds deposited into Ross' inmate trust account were applied toward the $252.00 filing fee debt. On January 11, 2016, ODOC collected $49.65 to be held in reserve to satisfy the limited money judgment. *Id.*, Att. 8, at 2. In subsequent months, withdrawals in the amounts of $34.04, $44.59, $63.39, and $54.39 were held in reserve by ODOC and, on June 13, 2016, the funds were submitted to the Umatilla County Circuit Court in full satisfaction of the debt. *Id*., Att. 7, at 2, and Att. 8, at 3-4.

On February 4, 2016, after the first withdrawal from his trust account, Ross requested administrative review. *Id*., Att. 6, at 2. On February 10, 2016, the supervisor of ODOC's Central Trust Office, defendant Bob Culp, issued a written decision, concluding that no error occurred in the collection of this county court filing fee debt. *Id*. at 1.

## STANDARD

Under FRCP 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of

2 – FINDINGS AND RECOMMENDATIONS

a triable issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citing FRCP 56(e)). In determining what facts are material, the court considers the underlying substantive law regarding the claims. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Otherwise stated, only disputes over facts that might affect the outcome of the suit preclude the entry of summary judgment. *Id.*

The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Reasonable doubts as to the existence of material factual issue are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

## FINDINGS

Defendants move for summary judgment on all claims, arguing that the Eleventh Amendment bars suit against state agencies in federal court and that the individual defendants are entitled to qualified immunity because they did not violate Ross' clearly established constitutional rights.

## I.    Eleventh Amendment Sovereign Immunity

### A.    Claims Against ODOC

Defendants first contend that Ross' claims against ODOC are barred by the Eleventh Amendment. Mot. Summ. J. 6, ECF #22. "It is well established that agencies of the state are immune under the Eleventh Amendment from private damages or suits for injunctive relief brought in federal court." *Savage v. Glendale Union High School*, 343 F.3d 1036, 1040 (9th Cir.

2003); *see also Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144 (1993); *Howard v. Oregon Department of Corrections*, No. 6:10–cv–06390–AA, 2013 WL 4786483, at *2 (D. Or. Sept. 5, 2013); *Grimes v. ODOC Agency*, No. 06–CV–619–AS, 2007 WL 1170636, at *2 (D. Or. Apr. 11, 2007).  Thus, Ross' claims against ODOC, a state agency, are precluded under the Eleventh Amendment and should be dismissed.

### B.      State-Law Claims Against Individual Defendants

Defendants next contend that under Oregon law, the individual defendants should be dismissed from Ross' state-law claims, the State of Oregon substituted in their place, and the State of Oregon thereafter dismissed under the Eleventh Amendment.  Mot. Summ. J. 7, ECF #22.  In support of their argument, defendants cite to ORS 30.265(1), which they contend provides that the "sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment or duties . . . shall be an action against the public body only." *Id.*

Defendants incorrectly cite to an old version of ORS 30.265(1).[1]  The current, relevant statutory scheme is codified in ORS 30.265(2) through (4).  ORS 30.265(2) provides in pertinent part:

> The sole cause of action for a tort committed by officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification under ORS 30.285 or 30.287 is an action under ORS 30.260 to 30.300.

---

[1] In 1991, the Oregon legislature added the following language to *former* ORS 30.265(1): "The sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification under ORS 30.285 or 30.287 shall be an action against the public body only." *Berry v. State, Dep't of Gen. Servs.*, 141 Or. App. 225, 227 (1996).  However, the statute has since been amended.

4 – FINDINGS AND RECOMMENDATIONS

ORS 30.265(3) goes on to provide that, if the alleged damages are equal to or less than the amount allowed under ORS 30.271, ORS 30.272, or ORS 30.273, the sole cause of action is against the public body:

> If an action under ORS 30.260 to 30.300 alleges damages in an amount equal to or less than the damages allowed under ORS 30.271, 30.272 or 30.273, the sole cause of action for a tort committed by officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification under ORS 30.285 or 30.287 is an action against the public body. If an action is filed against an officer, employee or agent of a public body, and the plaintiff alleges damages in an amount equal to or less than the damages allowed under ORS 30.271, 30.272 or 30.273, the court upon motion shall substitute the public body as the defendant.

ORS 30.265(3).  On the other hand, if the alleged damages are greater, the action may be brought against an individual defendant, pursuant to ORS 30.265(4):

> If an action under ORS 30.260 to 30.300 alleges damages in an amount greater than the damages allowed under ORS 30.271, 30.272 or 30.273, the action may be brought and maintained against an officer, employee or agent of a public body, whether or not the public body is also named as a defendant. An action brought under this subsection is subject to the limitations on damages imposed under ORS 30.271, 30.272 or 30.273, and the total combined amount recovered in the action may not exceed those limitations for a single accident or occurrence without regard to the number or types of defendants named in the action.

ORS 30.265(4).  In sum, "[u]nder the Oregon Tort Claims Act, an officer, employee, or agent of a public body may be held personally liable only when the requested prayer for relief exceeds the damages cap allowed under ORS 30.271, 30.272, or 30.273." *Kramer v. S. Or. Univ.*, No. 1:13–cv–00340–CL, 2013 WL 4782154, at *6 (D. Or. Sept. 5, 2013).

Here, however, Ross has not listed a specific amount of damages in the Complaint.[2] "Even though ORS § 30.265(4) provides that an action that 'alleges damages in an amount greater' than the applicable cap may be brought against individual agents of the public body, it

---

[2] In the Complaint, Ross alleges, "As I intend this to be a class action, total damages and monetary awards etc., will need to be set at a later date."  Compl. 6, ECF #2.

5 – FINDINGS AND RECOMMENDATIONS

does not state that such amount must be alleged in the complaint." *Achcar-Winkels v. Lake Oswego Sch. Dist.*, No. 3:15-CV-00385-YY, 2017 WL 2291338, at \*10 (D. Or. May 25, 2017). Because Ross has not alleged damages in an amount equal to or less than the statutory damage limit, ORS 30.265(3) does not require that the State of Oregon be substituted for the individual defendants. *Id.* ("Defendants cannot rely on ORS § 30.265(3) to support their motion to substitute the District for individual defendants where Plaintiffs have failed to allege a specific amount."); *see also Mclean v. Pine Eagle School District, No. 61*, 194 F. Supp. 3d 1102, 1123 (D. Or. 2016) (holding that defendants could not rely on ORS 30.265(3) to support their motion to substitute the school district for individual defendants because the plaintiff did "not 'allege[ ] damages in an amount equal to or less than' the statutory damage limit").

Although Ross' state-law claims against the individual defendants are not precluded under the Eleventh Amendment, they otherwise lack merit for the reasons discussed in subsection IV, *infra*. The individual defendants are also entitled to qualified immunity, as discussed below.

## II.    Qualified Immunity

The individual defendants contend that they are entitled to qualified immunity. Mot. Summ. J. 14-15, ECF #22. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity 'represents the norm' for government officials exercising discretionary authority." *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915 (9th Cir. 2012) (quoting *Harlow*, 457 U.S. at 807). "Under qualified immunity, an officer is protected from suit when he makes a reasonable mistake of law or fact." *Id*. (citing *Pearson v.*

*Callahan*, 555 U.S. 223, 231 (2009)). "[Q]ualified immunity is an immunity from suit and not merely damages." *Id*. "Only when an officer's conduct violates a clearly established constitutional right—when the officer should have known he was violating the Constitution—does he forfeit qualified immunity." *Id.*

The court engages in a two-part analysis in determining whether a defendant is entitled to qualified immunity. First, the court asks, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 235–236. Second, the court asks "whether the right was clearly established." *Id*. A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. The court has discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236; *see also Mueller v. Auker*, 576 F.3d 979, 993–94 (9th Cir. 2009).

Here, as detailed below, Ross has failed to establish the violation of any statutory or constitutional right, i.e., the first prong of the qualified immunity test. Thus, the individual defendants are entitled to qualified immunity.

## III.    Federal Constitutional Claims

To state a claim pursuant to 42 USC § 1983, a plaintiff must allege that a right secured by the Constitution or laws of the United States was violated. *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Ketchum v. Alameda Cnty.,* 811 F.2d 1243, 1245 (9th Cir. 1987); *Felix v. Chambers*, No. 1:14–cv–0889–MJS (PC), 2015 WL 2128503, at *1 (E.D. Cal. 2015). Here, Ross has not established any such violation.

### A.    Fourth Amendment

Prisoners have "extremely limited" Fourth Amendment rights while incarcerated.  *United States v. Vallez*, 653 F.2d 403, 406 (9th Cir. 1981).  "Lawful incarceration necessarily entails limitations upon many of the rights enjoyed by ordinary citizens."  *Taylor v. Knapp*, 871 F.2d 803, 806 (9th Cir. 1989) (citing *Hudson v. Palmer*, 468 U.S. 517, 524 (1984); *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).  "An inmate's fourth amendment rights are among the rights subject to curtailment.  In particular, the fourth amendment does not protect an inmate from the seizure and destruction of his property."  *Id*. (citations omitted).  "Hence it cannot protect an inmate from the conversion of his property."  *Id.*  Based on this reasoning, an inmate does not have a Fourth Amendment right to be free from the seizure of funds from his trust account.  *Felix*, 2015 WL 2128503, at *2; *see also Jackson v. SCI-Camp Hill*, No. 1:11–CV–1135, 2012 WL 3990888, at *5 (M.D. Pa. Sept. 11, 2012) (an inmate has no Fourth Amendment rights in connection to his inmate account).

Moreover, inmates do not have a reasonable expectation of privacy in their trust accounts due to the "competing institutional security interests" of the prison.  *Witherow v. Cortez-Masto*, No. 1:11–CV–1135, 2010 WL 1292968, at *5 (D. Nev. January 14, 2010), *report and recommendation adopted*, 2010 WL 1292466 (D. Nev. Mar. 30, 2010).  ODOC manages inmate funds and assesses them pursuant to administrative rules.  *See* OAR 291-158-0005(3)(b).  There are many justifications for allowing ODOC to manage inmate accounts, including the need to deter escape and prevent the use of funds for extortion and other illegal purposes.  *Id.*; *see also Oliver v. Sundquist*, 11 Fed. Appx. 570, 571 (6th Cir. 2001) (finding no reasonable expectation of privacy in prisoner sales of arts and crafts); *Soto v. Meachum*, Civ. No. B–90–270 (WWE), 1991 WL 218481, *7 (D. Conn. Aug. 28, 1991) ("plaintiff has no reasonable expectation

8 – FINDINGS AND RECOMMENDATIONS

of privacy in the contents of his inmate account"). For all of these reasons, Ross' Fourth Amendment claim fails.

### B. Eighth Amendment

Likewise, the withdrawal of funds from Ross' trust account does not rise to the level of cruel and unusual punishment in violation of the Eighth Amendment. "The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety." *Cockcroft v. Kirkland*, 548 F. Supp. 2d 767, 774 (N.D. Cal. 2008). Here, Ross alleges no facts supporting a claim that he was denied "the minimal civilized measures of life's necessities." *Ellington v. Prunty*, 182 F.3d 925 (9th Cir. 1999). The withdrawal of funds from an inmate trust account pursuant to court orders to pay debts that a prisoner elected to incur is not a "punishment" or a denial of "humane conditions of confinement" to which the Eighth Amendment applies. *Alexander v. Hicks*, 2017 WL 1356071, at *2 (E.D. Cal. April 6, 2017); *Felix*, 2015 WL 2128503, at *3; *see also Erdman v. Martin*, 52 Fed. Appx. 801 (6th Cir. 2002).

### C. Equal Protection

Ross also fails to establish that defendants violated his equal protection rights. He offers no evidence that defendants discriminated against him on the basis of his membership in a protected class. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). Moreover, there is no evidence that he was treated differently than other similarly situated inmates. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Martin v. Crandall*, No. C-94-3811 MHP, 1995 WL 498844, at *2 (N.D. Cal. Aug. 17, 1995).

### D.    Due Process

The Due Process Clause of the Fourteenth Amendment protects individuals from arbitrary government action by prohibiting states from depriving people of "life, liberty, or property without due process of law." U.S. Const. amend. XIV; *Martin*, 1995 WL 498844, at *1. Prisoners retain their right to due process, subject to the restrictions imposed by the nature of the penal system. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). However, the Due Process Clause is violated when the agency "prescribes and enforces forfeitures of property without underlying statutory authority and competent procedural protections." *Nevada Dept. of Corrections v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) (citing *Vance v. Barrett*, 345 F.3d 1083, 1090 (9th Cir. 2013)) (internal quotations omitted).

ODOC is authorized by state law to assess inmate accounts for court-ordered costs and fees, including those assessed in post-conviction cases. OAR 291-158-0005(3)(b); OAR 291-158-0015(2); ORS 138.590(8)(b).[3] Administrative review is available, not to contest the underlying debt that is the subject of a court order, but to identify errors in the collection of the debt. OAR 291-158-0065.[4] Here, where the collection of funds from the inmate trust account

---

[3] In the Declaration of Bob Culp (ECF #23), defendants rely on ORS 30.643(4), but that section addresses an "action against a public body." An "action against a public body" is elsewhere expressly defined to exclude petitions for post-conviction relief. ORS 30.642(1). The more appropriate statute appears to be ORS 138.590(8)(b), which allows for the post-conviction filing fee to be "drawn from, or charged against, the petitioner's trust account if the petitioner is an inmate in a correctional facility."

[4] The version of OAR 291-158-0065 that was in effect at the time and is attached as an exhibit to the Culp Declaration provides for administrative review of the collection of ODOC debts. Court fees are non-ODOC debt. *See Farrar v. Peters*, No. 6:15-cv-00952-KI, 2016 WL 3156311 at *10 (D. Or. June 3, 2016) (referencing "non-DOC debt, such as court fees and garnishment orders"). Nonetheless, there is no dispute that Ross was provided with administrative review.

10 – FINDINGS AND RECOMMENDATIONS

was pursuant to a valid state court order and Ross sought and received administrative review, this court should find competent procedural protections.

Asserting that it is a due process violation to deplete his trust account funds, Ross contends that he is entitled to a $400 "personal property exemption." Compl. 6, ECF #2. He relies on a March 2, 2013 newspaper article detailing a Multnomah County Circuit Court decision to apply a personal property exemption to a compensatory fine imposed on an inmate in a criminal case. Reply 3-5, Ex. 1, ECF #35. The Oregon legislature subsequently enacted ORS 423.105, which authorizes ODOC to collect "court-ordered financial obligations" from an inmate's trust account and set up a $500 "transitional fund" for inmates who have not been sentenced to death or life imprisonment. "Court-ordered financial obligations" are defined as compensatory fines, restitution, child support, monetary awards for crime victims, and monetary awards arising out of assaults of ODOC employees. ORS 423.105(1)(b). Filing fees, however, are not included in this exemption. *Id*.

Given that Ross voluntarily incurred the filing fees, failed to provide evidence of ODOC's violation of state law concerning the administration of inmate trust accounts, and availed himself of administrative review procedures, there can be no violation of the due process clause. *Alexander*, 2017 WL 1356071, at *3 (finding no due process violation where filing fees for two cases were withdrawn from the inmate's trust account in accordance with the controlling federal statute).

### E.    Thirteenth Amendment

Ross contends that the collection of funds from his prison trust account implicates his constitutional right to be free from slavery. Compl. 4, ECF #2. The Thirteenth Amendment, however, expressly creates an exception for the prison context. "Neither slavery nor involuntary

servitude, *except as punishment for crime whereof the party shall have been duly convicted,* shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend XIII (emphasis added). Accordingly, convicted criminals are not protected against involuntary servitude by the Thirteenth Amendment. *Hale v. State of Arizona,* 993 F.2d 1387, 1394 (9th Cir. 1993); *Canell v. Multnomah County*, 141 F. Supp. 2d 1046, 1058 (D. Or. 2001).

## IV.    State-Law Claims

Ross asks this court to invoke the Oregon Poverty Law, but neither defendants nor this court could identify any such law. To the extent Ross is attempting to reference the exemptions codified in ORS 423.105, those exemptions do not apply to deductions from inmate trust accounts for court fees, as discussed above in subsection III.D.

Ross also alleges claims under the Oregon Constitution, Article 1, sections 10, 16, 20, and 21. Claims under the Oregon Constitution are barred by sovereign immunity. *See Webber v. First Student, Inc.*, No. CIV. 11-3032-CL, 2011 WL 3489882, at \*5 (D. Or. July 12, 2011), *report and recommendation adopted*, 2011 WL 3489915 (D. Or. Aug. 9, 2011) ("The doctrine of sovereign immunity is implicit in article IV, section 24 of the Oregon Constitution."); *Stearns v. Williamson*, No. 2:13–cv–00479–AA, 2013 WL 6328091, at \*2 (D. Or. Dec. 4, 2013) ("Plaintiff has no private right of action to sue for money damages under the Oregon Constitution."); *Hunter v. City of Eugene*, 309 Or. 298, 302 (1990) ("Oregon's Bill of Rights provides no textual or historical basis for implying a right to damages for constitutional violations.").

Violations of the Oregon Constitution may be actionable as torts under the Oregon Tort Claims Act ("OTCA"), ORS 30.260-30.300. *See Margulies v. Tri-Cty. Metro. Transp. Dist. of Oregon*, No. 3:13-CV-00475-PK, 2014 WL 4419263, at \*8 (D. Or. Sept. 8, 2014) ("In enacting the OTCA, the Oregon legislature partially waived sovereign immunity, thereby allowing

12 – FINDINGS AND RECOMMENDATIONS

'injured persons to assert—albeit with some limitations—the same tort claims against public bodies that they could, at common law, assert against other tortfeasors.'"); *Webber*, 2011 WL 3489882, at \*5 (holding the OTCA is a limited waiver of sovereign immunity for torts committed by public bodies or their employees, agents, and officers acting within the scope of their employment).  Ross does not reference the OTCA in his Complaint, although he attached a tort claim notice dated May 16, 2016, as an exhibit.  Compl., Ex. 1, ECF #2.

Nonetheless, to the extent Ross has validly pled any tort claims pursuant to the OTCA, they lack merit.  Section 10 of Article I of the Oregon Constitution provides:

> No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation.

"Article I, section 10, is not a 'due process' clause."  *Smith v. Dep't of Corr.*, 219 Or. App. 192, 196 (2008) (citing *Davis v. Board of Parole*, 200 Or. App. 366, 369 n. 3 (2005)); *see also State v. Stroup*, 290 Or. 185, 200 (1980) (noting the "Oregon Constitution does not have a due process clause of its own").  "Its principal function is to bar the legislature from eliminating common-law remedies that were available to redress injuries to 'person, property, or reputation,' without providing a 'constitutionally adequate substitute remedy.'"  *Smith*, 219 Or. App. at 196 (citation omitted).  "Here, to the extent that the protections of Article I, section 10, extend to [Ross] in this context, the challenged rules do not violate the provision."  *Id.* at 197.  "On their face, the challenged rules merely outline administrative procedures governing [inmate funds]; they do not limit or eliminate any common-law remedy that might be available to inmates for any deprivation of their rights.  Hence, the rules do not offend Article I, section 10."  *Id.*

Section 16 contains Oregon's cruel and unusual punishment clause.  "Oregon courts have largely interpreted the Oregon State Constitution's prohibition of cruel and unusual punishment

13 – FINDINGS AND RECOMMENDATIONS

parallel to the U.S. Constitution Eighth Amendment prohibition of cruel and unusual punishment." *Taylor v. Ridley*, No. 2:18-CV-00314-SU, 2018 WL 3550266, at \*4 (D. Or. July 24, 2018).  As discussed in subsection III.B above, ODOC's actions have not violated Ross' right to be free of cruel and unusual punishment.

Section 20 provides that "No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."  "In general, equal protection analysis is the same under both article I, section 20 of the Oregon Constitution and the Fourteenth Amendment of the U.S. Constitution.  *Webber,* 2011 WL 3489882, at \*7 (citing *State v. Borowski*, 231 Or. App. 511, 519–20 (2009) (identifying article I, section 20 of the Oregon Constitution as the state analog of the Fourteenth Amendment); *Babcock v. Emp't Div.*, 72 Or. App. 486, 491 (1985) (applying the Oregon and federal equal protection claims identically); *City of Klamath Falls v. Winters*, 289 Or. 757, 774–75 (1980) ("[I]n the usual case substantially the same analysis is applicable in determining whether there has been a denial of equal protection of the laws or a grant of a privilege or immunity on terms not equally applicable to all citizens.")).  As discussed above in subsection III.C, Ross' equal protection claim lacks merit.

Finally, section 21 contains a prohibition against ex-post facto laws.  As with all of his Oregon constitutional claims, Ross does not provide any specific argument regarding how this constitutional provision was violated.  Where Ross has failed to identify an ex post facto violation, the claim should be denied.

14 – FINDINGS AND RECOMMENDATIONS

**RECOMMENDATIONS**

Defendants' Motion for Summary Judgment (ECF #22) should be GRANTED in its entirety and all claims dismissed with prejudice.  Ross' Cross Motion for Summary Judgment (ECF #26) should be DENIED in its entirety.

**SCHEDULING ORDER**

These Findings and Recommendations will be referred to a district judge.  Objections, if any, are due Monday, January 14, 2019.  If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

**NOTICE**

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED  December 26, 2018.


/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge


15 – FINDINGS AND RECOMMENDATIONS